42 F.3d 1384
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Anastacio LOPEZ, Ramonita Miranda De Lopez, ET AL.,
Plaintiffs, Appellants,
v.
MOTOR PLAN INC., ET AL., Defendants, Appellees.
 No. 94-1257
 United States Court of Appeals,
First Circuit.
 Dec 6, 1994
 
 Appeal from the United States District Court for the District of Puerto Rico [Hon. Juan M. Perez-Gimenez, U.S. District Judge ]
 Jose Antonio Pagan Nieves for appellants.
 Jose L. Gandara with whom Bauza & Davila was on brief for appellees.
 D. Puerto Rico
 AFFIRMED.
 Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.
 BOUDIN, Circuit Judge.
 
 
 1
 On December 8, 1988, Wanda Soto Nieves, a Puerto Rico resident and employee of Motor Plan, Inc., was returning from a Motor Plan company Christmas party. Motor Plan was a car rental agency, incorporated in Puerto Rico and a franchisee of Budget Rent a Car, a separate corporation headquartered in Illinois. Motor Plan did business under the Budget name. Soto was driving a car owned and provided to her by Motor Plan as a fringe benefit. The car collided with another car driven by Anastacio Lopez, a resident of Florida. Lopez's left arm and hand were badly injured.
 
 
 2
 On December 7, 1989, Lopez sued Soto and Motor Plan in federal district court claiming that Soto had been negligent when operating the car and that Motor Plan was also responsible. "Budget" was named as a defendant but not served. Jurisdiction was based on diversity. Lopez's wife and children, who were not in the car at the time of the accident, sued for mental suffering and other damages. By amendments, the Lopezes specified as defendants both Motor Plan's insurer, Corporacion Insular de Seguros, and Budget as a corporation distinct from Motor Plan.
 
 
 3
 After Budget had been named as a separate corporate defendant and served with the amended complaint, it answered and denied liability. The Lopezes served interrogatories, document requests and requests for admission on Budget in December 1992. Shortly thereafter, a stay of proceedings was entered because of the insolvency of the insurer; but Budget proceeded to answer the discovery requests in February 1993, and the stay was eventually lifted.
 
 
 4
 In September 1993, Budget filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), attaching to its motion both a copy of its franchise agreement with Motor Plan and copies of Motor Plan's answers to interrogatories posed by the Lopezes. Budget averred that it was neither Soto's employer nor the owner of the car, and it denied that its mere receipt of benefits from its relationship with Motor Plan was grounds for imposing liability of Budget. Two months later, on November 17, 1993, the Lopezes filed an opposition to the motion to dismiss that included no affidavit material and explicitly accepted Budget's statement of undisputed facts (with one irrelevant exception).
 
 
 5
 The gist of the opposition was an argument that "Budget and Motor Plan have a partnership which has earned monies for both of them." The partnership allegation was repeated several times-although without any further detail-and was the only explicit theory offered for imposing liability on Budget. The opposition also said that the agreement under which Motor Plan operated had been prepared by Budget and permitted Budget to regulate "most of the phases of the Motor Plan operation," and that Motor Plan was not an independent contractor.
 
 
 6
 In a decision dated December 21, 1993, the district court granted Budget's motion to dismiss. Because Budget had attached documents to its motion, the court treated the motion to dismiss as one for summary judgment. See Fed. R. Civ. P. 12(b)(6), 56(c). On the merits, the court said that there was no basis in Puerto Rico law for holding Budget and Motor Plan to be partners and that the Lopezes had not presented any genuine issue of material fact that, if decided in their favor, would provide any other basis for imposing liability on Budget.
 
 
 7
 Judgment in favor of Budget was formally entered on January 20, 1994, and on the following day the Lopezes filed a motion under Fed. R. Civ. P. 59 or, in the alternative, Fed. R. Civ. P. 60. In addition to asking for reconsideration of the summary judgment, the motion asserted that new evidence had been discovered: first, that Budget had previously settled a similar suit in the same district court with a large payment and, second, that Budget had been listed as an additional insured under the Motor Plan insurance policy. For the first time, the Lopezes cited a number of cases on franchisor liability. The motion was denied and this appeal followed.
 
 
 8
 Although summary judgment was entered in favor of Budget, there was in fact no appealable judgment at the time because claims against Motor Plan and the insurer remained pending. The Lopezes' appeal was nevertheless briefed and argued in this court before this defect was noted. Thereafter, Motor Plan settled; the claim against the insurer was disposed of in some fashion not disclosed; and a final disposition of all claims has now occurred. Within the time for filing an appeal from this final disposition, the Lopezes filed a new notice of appeal from the decision in favor of Budget, and we resolve the case on the existing briefs and argument.
 
 
 9
 On appeal, the Lopezes first argue that it was improper for the district court to grant summary judgment when there had been only one round of discovery and when depositions would have been crucial in showing "the real nature of the relationship" between Budget and Motor Plan. In opposing Budget's motion to dismiss, the Lopezes did not assert that they needed additional discovery. Further, there is no indication that further discovery could help the Lopezes establish their partnership theory, which was the only argument it made in opposing summary judgment.
 
 
 10
 Turning to the merits, we think that the district court correctly resolved the issue presented to it. Nothing suggests that Budget and Motor Plan were partners, that is to say, the co-owners of a single business. The common indicia of partnership-such as expressed intent to form a partnership, contribution to a common fund to provide capital for a partnership, the holding of assets in partnership name-are not even alleged. See generally H. Reuschlein & W. Gregory, Agency and Partnership Sec. 175 (1990). The Lopezes dwell on the payments from Motor Plan to Budget; but a licensing fee based on a percentage of gross income is a common feature of many licenses between non-partners, not a hallmark of partnership.
 
 
 11
 Although the franchise agreement says that Illinois law governs the relationship, the outcome is no different even if a local Puerto Rico court would have applied Puerto Rico law to determine Budget's responsibility. The district court ruled that under Puerto Rico law an enterprise is not a partnership in the absence of a "common fund" to which the partners contribute and from which the partners' profits are divided. See 31 P.R. Laws Ann. tit. 31, Sec. 4311. On appeal, the Lopezes do not challenge this assertion nor do they point us to any other authority under Puerto Rico law for invoking the partnership label.
 
 
 12
 In their post-judgment motion and on this appeal, the Lopezes largely shifted their emphasis and now claim that Budget so dominated Motor Plan that it is vicariously liable for Motor Plan's negligence. Puerto Rico's Civil Code does establish vicarious liability for the negligence of "an employee, agent, pupil, or apprentice." P.R. Laws Ann. tit. 31 Sec. 5142. This provision parallels, and as to non-employees goes somewhat beyond, the widely prevailing "respondeat superior" rule that an employer or "master" is vicariously liable for the negligence of an employee or a "servant" acting within the scope of employment. See, e.g., Restatement (Second) of Agency Sec. 210 (1958).
 
 
 13
 At one time, it appeared that the Supreme Court of Puerto Rico was moving toward an even more expansive concept of vicarious liability. In Martinez-Gomez v. Chase Manhattan Bank, 108 P.R. Dec. 515 (1979), the court held a bank liable for a tort committed by an otherwise independent contractor hired to repossess vehicles for the bank. The court relied in part on the substantial and foreseeable hazards created by this activity and also noted the benefits received by the bank, a notion that could be used to extend vicarious liability almost without limit to those who engage independent contractors.
 
 
 14
 In Lopez v. Cruz Ruiz, 132 P.R. Dec. , No. CE-86-744 (October 5, 1992), the Supreme Court of Puerto Rico retrenched. There, the court held that a municipality that hired another company to engage in construction work was not liable for a motor vehicle accident that occurred when in the course of the work a driver for the contractor struck a child. The court said that
 
 
 15
 the injuries caused by the contractor's employee resulted from his failure to take routine precautions people normally take when driving a motor vehicle. This is the type of negligence for which the employer of an independent contractor is not liable.
 
 
 16
 Id. In light of Lopez, we think that Martinez-Gomez is of no help to the Lopezes in this case.
 
 
 17
 What remains is an argument first made in the post- judgment motion that Budget is liable for the tort liability incurred by Motor Plan because Budget is the franchisor and Motor Plan the franchisee. This would comprise, in all likelihood, a double layer of vicarious liability: Motor Plan, if liable itself to the Lopezes, incurs this liability not because of its own negligence but as the owner of the car that Soto was driving, see P.R. Laws Ann. tit. 9, Sec. 1751 or as the employer of Soto, see P.R. Laws Ann. tit. 31, Sec. 5142.
 
 
 18
 The state of the law on franchisor liability for the wrongdoing of a franchisee (or the latter's employees) is remarkably unsettled. Annot., 59 A.L.R. 4th 1142 (1988). This is not altogether surprising. Franchise agreements vary in many ways, and different types of claims present different problems. Further, even a fairly conventional franchise agreement does not fit easily into the traditional categories for determining respondeat superior liability. Underlying the range of different decisions on franchisor liability are policy questions about enterprise liability that are rarely articulated.
 
 
 19
 In opposing summary judgment, the Lopezes did not invoke these franchise cases or the theories they have developed. On the contrary, the Lopezes persistently pressed a quite different theory-partnership-that turned out to have no basis in the facts. While the franchise case law was developed in some detail in the Lopezes' post-judgment motion, no explanation was provided to the district court why the arguments were not made in timely fashion, nor has any explanation been offered to us.
 
 
 20
 In general, a litigant who does not offer a legal theory at the time the matter is decided cannot complain later. Ordinarily "[m]otions under Rule 59(e) .... may not be used to argue a new legal theory." FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992). Motions for such a purpose to reopen a judgment under Rule 60(b) face even greater hurdles. Of course, a district court has considerable discretion in these areas, but the test on appeal is normally whether the district court abused its discretion. Cotto v. United States, 993 F.2d 274, 277 (1st Cir. 1993). We see no such abuse here.
 
 
 21
 If we thought that there was clear-cut or even probable liability under Puerto Rico law on the Lopezes' new theory, we might hesitate in the interests of justice to affirm outright. But no pertinent local Puerto Rico case law is cited to us, and we have very little idea how Puerto Rico courts would decide the issues. In addition, the Lopezes have no likely claim under several of the more plausible "sub-theories" used to impose liability on franchisors. See, e.g., Drexel v. Union Prescription Ctrs. Inc., 582 F.2d 781, 790-97 (3d Cir. 1978) (discussing franchisor's liability for franchisee's torts based on apparent authority); Singleton v. Int'l Dairy Queen, Inc., 332 A.2d 160, 161-62 (Del. Super. Ct. 1975) (discussing franchisor's liability when franchisor requires the franchisee's injurious conduct).
 
 
 22
 Nothing in our appraisal is affected by the new evidence proffered by the Lopezes in their post judgment motion. Budget's liability cannot be enlarged because it chose to settle rather than litigate another case, even assuming it to be an analogous one. Nor does it matter if Budget insisted that Motor Plan take out insurance to include Budget as a protected party, a precaution that could be justified by many potential liabilities. Accordingly, we need not concern ourselves with whether these contentions, first made by motion after the judgment, came too late.
 
 
 23
 Affirmed.