Lydia Morales LOPEZ and Milagros Morales Lopez, Plaintiffs,

v.

NUTRIMIX FEED COMPANY, INC. And Insurance Company ABC; General Accident Insurance Company, Defendants and Third–Party Plaintiffs,

v.

Alexis Lugo–Acosta; Octavio Lugo–Santos; El Fenix De Puerto Rico; Mislael Ortiz–Ramirez, his wife Jane Roe, and the Conjugal Partnership constituted between them; and John Doe and ABC Insurance Co., Third–Party Defendants,

v.

Cabimar, S.E.; Puerto Rican American Insurance Company ("PRAICO"), Third–Party Defendants.

No. CIV. 95–1999(JAF).

United States District Court, D. Puerto Rico.

Oct. 29, 1998.

Jorge Ortiz–Brunet, Ortiz Toro & Ortiz Brunet, San Juan, PR, Glenn Carl James–Hernandez, Hato Rey, PR, for Lydia Morales–Lopez, Milagros Morales–Lopez.

Antonio E. Marichal–Aponte, San Juan, PR, Modesto L. Rodriguez–Suarez, Hato Rey, PR, Harold D. Vicente–Gonzalez, Vi-

cente & Cuevas, Santurce, PR, Jaime E. Morales–Morales, Montijo & Morales, Hato Rey, PR, for Nutrimix Feed Company, Inc.

Harold D. Vicente–Gonzalez, Vicente & Cuevas, Santurce, PR, for Cigna Insurance Co.

Mislael Ortiz–Ramirez, San German, PR, pro se.

Carlos A. Ramos, San Juan, PR, Jaime Mayol-Bianchi, Mayol–Bianchi, PSC, Guaynabo, PR, for El Fenix De Puerto Rico, Inc.

Jorge F. Freyre–Forect, Bauza & Davila, Old San Juan, PR, Manuel Porro–Vizcarra, Guaynabo, PR, for General Accident Insurance Co.

Pedro J. Cordova–Pelegrina, San Juan, PR, for Cabimar, S.E., Puerto Rican American Insurance Co.,

### OPINION AND ORDER

FUSTE, District Judge.

In this diversity automobile accident case, Defendant and Third–Party Plaintiff Nutrimix Feed Co. ("Nutrimix") moves for summary judgment against Plaintiffs, Lydia Morales–López and Milagros Morales–López. Defendant and Third Party Plaintiff General Accident Insurance Company of Puerto Rico ("General Accident") moves for summary judgment against Third–Party Defendants Cabimar, S.E. and Puerto Rican American Insurance Co. ("PRAICO").

### I.

#### Facts

Nutrimix is a Puerto Rico company that prepares and sells feed for farm animals. Nutrimix operates a mill that receives, stores, and processes bulk feed in Cataño and then hires independent contractors to deliver its bulk-feed products within Puerto Rico. Nutrimix does not own any of its own trucks. Nutrimix requires all independent contractors who deliver its bulk feed products to have a General Liability Policy with a minimum coverage amount above $100,000 and a cancellation clause whereby Nutrimix is notified of any cancellation of deliveries; cargo insurance up to $6,000; State Insurance Fund Policy Certification; cargo autho-rization issued by the Public Service Commission of Puerto Rico; valid driver licenses for all the truck drivers delivering Nutrimix's products; and valid truck licenses for all vehicles delivering Nutrimix's products.

On July 3, 1995, Nutrimix hired independent contractor Alexis Fernando Lugo–Acosta to deliver some of its bulk-feed products to Agro–Extra de Yauco. At that time, the tractor trailer being used and the driver of the truck, Octavio Lugo–Santos, complied with Nutrimix's policies. The tractor trailer subsequently broke down along Highway No. 2 in San Germán while en route to its destination in Yauco. Without informing Nutrimix, the independent contractor left the tractor trailer on the property of José Vicente–Sáez for two nights, during which time he replaced the tractor trailer with another one that did not meet Nutrimix's requirements. The replacement tractor trailer was owned by Alexis Fernando Lugo–Acosta and Mislael Ortiz–Ramírez.

On July 5, 1995, a car driven by Juan Morales–Morales was involved in a crash with the replacement tractor trailer driven by Octavio Lugo–Santos on Highway No. 2 in San Germán. Mr. Morales died in the crash and his mother, Lydia Morales–López, and aunt, Milagros Morales–López, sued Nutrimix and General Accident, the Puerto Rico Highway Authority's insurer. Nutrimix, as a Third–Party Plaintiff, sued Third–Party Defendants Alexis Fernando Lugo–Acosta, Octavio Lugo–Santos, Mislael Ortiz–Ramírez, and Nationwide Insurance Company. In a previous order, faced with a total lack of evidence of any policy, we dismissed Nationwide from this case. *See Docket Document No. 54.* General Accident, a Third–Party Plaintiff, sued Third–Party Defendants Cabimar, S.E. and PRAICO, Cabimar's insurer.

Defendant Nutrimix has moved for summary judgment alleging that Plaintiffs have failed to state a cause of action for negligence under section 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141.

Third–Party Plaintiff General Accident has moved for summary judgment against Cabimar and PRAICO alleging that an insurance contract and hold-harmless agreement signed

by General Accident, Cabimar, and PRAICO obligates Cabimar and PRAICO to provide defense and coverage to the Puerto Rico Highway Authority in this litigation.

## II.

### Summary Judgment Standard

The familiar purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed.R.Civ.P. 56 advisory committee's note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Where the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the initial showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and courts "must view the evidentiary record in the light most hospitable to the nonmovant and must indulge all reasonable inferences in his favor." *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990).

## III.

### Nutrimix's Summary Judgment Motion

#### A. Negligence

Nutrimix moves for summary judgment pursuant to Fed.R.Civ.P. 56(c) alleging that Plaintiffs' complaint fails to state a cause of action for negligence under section 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141. Specifically, Nutrimix claims that Plaintiffs failed to prove that Nutrimix breached a duty owed to the decedent and, thus, caused the decedent's death.

■ Under Puerto Rico tort law, to state a cause of action for negligence a plaintiff must make a *prima facie* showing of (1) an act or omission constituting fault or negligence; (2) damages; and (3) a casual connection between the defendant's tortious conduct and the injuries sustained by the plaintiff. *Smith v. Williams Hospitality Management Corp.,* 950 F.Supp. 440, 445 (D.P.R.1997); *Sociedad De Gananciales v. Gonzalez Padin,* 117 D.P.R. 94, 106, 1986 WL 376809 (1986). *See also* RESTATEMENT (SECOND) TORTS § 281 (1966 App.).

■ Pursuant to this standard, an act or omission constitutes negligence when the defendant had a duty to act and failed to respond as a reasonably prudent person would in similar circumstances. *Jimenez v. Pelegrina Espinet,* 112 D.P.R. 700, 704, 1982 WL 210615 (1982). Liability does not attach until plaintiff proves that if defendant had acted as a reasonably prudent person, the damages sustained would not have occurred. *Id.* This element of causation precludes the imposition of absolute or objective responsibility, but rather imposes a subjective reasonable person standard. In essence, the causation element insures that a negligent tortfeasor is not an insurer. *Estremera v. Inmobiliaria,* 109 D.P.R. 852, 856, 1980 WL 138530 (1980).

■ Under Puerto Rico law, an individual who fails to exercise due diligence so as to prevent a foreseeable injury is at fault. *Widow of Delgado v. Boston Insurance Co.,* 99 P.R.R. 693, 703 (1971). Liability attaches only when an individual's negligence is the proximate cause of another's injuries. *Id.*

Both fault and the necessary causal nexus between the wrongful act and the damage sustained are required. *Jimenez v. Pelegrina*, 112 D.P.R. at 881–82. The causal nexus principle limits a party's liability to only those hazards that could be "anticipated by a prudent person." *Pacheco v. Puerto Rico Water Resources Authority*, 112 P.R.R. Offic. Trans. 369, 372 (1982).

 Puerto Rico law places particular emphasis on the element of foreseeability as an essential prerequisite for liability. *Elba v. U.P.R.*, 125 D.P.R. 294, 310, 1990 WL 710185 (1990). Foreseeable events are those that "may be calculated by a prudent conduct alert to eventualities that may be expected in the course of life." *Jimenez v. Pelegrina*, 112 D.P.R. at 888. Foreseeability does not require that the precise risk or exact harm which occurred have been foreseen or anticipated. The essential factor is that the individual should have foreseen consequences of the kind that in fact occurred. *Gines v. Puerto Rico Water Resources Authority*, 86 P.R.R. 490, 496 (1962).

Acknowledging the complexities in determining foreseeability, the Puerto Rico Supreme Court has said, " '[T]he difficult question' of how far the causal nexus reaches will never be resolved in a fully satisfactory manner through abstract rules, but in doubtful cases the judge must solve them according to his free conviction, considering all the circumstances." *Estremera v. Inmobiliaria, Inc.*, 109 D.P.R. at 829.

#### B. *Analysis of Negligence*

 Nutrimix argues that it was not in a position to incur any tort liability in the accident that gave rise to the present case. In other words, Nutrimix maintains that it acted as a reasonably prudent person would in similar circumstances. To support this contention, Nutrimix details its policy of requiring all its independent contractors who conduct deliveries to carry specific levels and forms of insurance and certain permits. Alexis Lugo–Acosta was the independent contractor hired to perform the delivery in process during the accident. At the time Mr. Lugo–Acosta picked up the goods from the Nutrimix terminal, he had complied with Nutrimix's licensing and insurance policy. Thus, Nutrimix alleges that it acted as a reasonably prudent person would have in similar circumstances.

Plaintiffs have not set forth facts alleging anything to the contrary nor any materially disputed facts pointing to Nutrimix's deviation from the reasonably prudent person standard. We find that the facts show that Nutrimix acted as a reasonably prudent person would have in similar circumstances and thus did not breach any duty of care to the decedent.

However, even assuming that Nutrimix breached a duty of care owed to decedent, Nutrimix alleges that Plaintiffs have failed to show that any act or omission by Nutrimix was the proximate cause of the injury. To prove proximate causation, Plaintiffs must show that the accident was a foreseeable result of Nutrimix's alleged breach of duty. Nutrimix claims it had no basis to know that the truck initially used would break down and require replacement, and that the goods would wait two days to be delivered. Nutrimix further claims it had no way of knowing that the truck ultimately used would not have authorization from the Public Service Commission and would not be included in the insurance policy that Nutrimix requires of its independent contractors. Nutrimix claims that since it could not foresee or prevent the incident from happening, it may not be subject to liability under 31 L.P.R.A. § 5141 (1990).

Plaintiffs have failed to allege any material dispute as to the proximate causation of the accident. Thus, we find that Plaintiffs have failed to prove that Nutrimix should have foreseen the accident that occurred. We find that Nutrimix was not negligent and, therefore, is not directly liable.

#### C. *Independent Contractor Liability*

 Plaintiffs also allege that Nutrimix is indirectly liable under the independent contractor doctrine. We begin by looking to the Restatement (Second) of Agency, which states that an independent contractor is "a person who contracts with another to do something for him but who is not controlled

by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." RESTATEMENT (SECOND) OF AGENCY § 2 cmt. b (1957). In Puerto Rico law, the meaning of "independent contractor" hinges more on the totality of circumstances than on any particular factor—it is an inquiry that must be performed on a case-by-case basis. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29 (1st Cir.1998); *Matos–Rivera v. Flav–O–Rich*, 876 F.Supp. 373, 383 (D.P.R. 1995) (citing *Nieves v. Univ. of Puerto Rico*, 7 F.3d 270, 278 (1st Cir.1993), and *Mariani v. Christy*, 73 D.P.R. 782, 797, 1952 WL 7982 (1952)).

■■■■ However, several general factors guide courts in making the determination of whether a party is an independent contractor. These factors include:

1) the form and manner of the employment contract concerning provisions of full-time or part-time employment; 2) whether the employment contract provides for vacation time, sick leave, or a retirement program; 3) the extent and nature of control the individual has over the execution of his duties; 4) the form of payment; and 5) the ownership status of equipment which is utilized.

*Rivera v. Hosp. Universitario*, 762 F.Supp. 15, 17 (D.P.R.1991). The extent and nature of control the individual exercises over the execution of his duties is a particularly crucial element to this determination:

[T]he most important criteria in the determination of an employee status, *vel non*, is the control the employer may have over the work performed, regardless of whether or not said control is exercised. It is the existence of the right or authority to so intervene or control on the part of the employer or principal that makes the other person an employee and not an independent contractor.

*Lugo v. Matthew Bender & Co., Inc.*, 579 F.Supp. 638, 642 (D.P.R.1984); *see also Nieves v. Univ. of Puerto Rico*, 7 F.3d at 278 (stating that "[t]he court must consider the totality of the circumstances, focusing principally on the level of control contractually

reserved to the governmental entity over the physician's provision of patient services").

Plaintiffs point to *Martinez Gomez v. Chase Manhattan Bank*, 108 D.P.R. 515, 1979 WL 59124 (1979), where the court held a bank liable for a tort committed by an otherwise independent contractor hired to repossess vehicles for the bank. The court relied in part on the substantial and foreseeable hazards created by this activity and also noted the benefits received by the bank, a notion that could be used to extend vicarious liability almost without limit to those who engage independent contractors.

Subsequently, the Puerto Rico Supreme Court clarified its position. In *Lopez v. Cruz Ruiz*, 92 J.T.S. 130, 1992 WL 755510 (Oct. 5, 1992), the Supreme Court of Puerto Rico retrenched, holding that a municipality's hiring of a construction company did not render it liable for a motor vehicle accident during the course of that company's labors. The court held that the injuries were traceable only to the independent contractor's employee's failure to take routine driving precautions. The court held that the negligence of an independent contractor does not render the employer of an independent contractor liable. As the First Circuit stated in *Lopez v. Motor Plan*, 42 F.3d 1384, 1994 WL 678502, *3 (1st Cir.1994), the *Lopez v. Cruz Ruiz* case denotes a marked retreat in liability for employers of independent contractors. The First Circuit applied the *Lopez v. Cruz Ruiz* case to determine that a franchisor was not liable for an accident of an employee of a franchisee. This interpretation of *Lopez v. Cruz Ruiz* reflects the emphasis in Puerto Rico law on the reestablishment of the foreseeability requirement in determining liability against the employer of an independent contractor.

### D. *Analysis of Independent Contractor Liability*

■■ Here, we begin with an analysis of the general factors used in determining individual contractor liability: 1) the form and manner of the employment contract concerning provisions of full-time or part-time employment; 2) whether the employment contract provides for vacation time, sick leave,

or a retirement program; 3) the extent and nature of control the individual has over the execution of his duties; 4) the form of payment; and 5) the ownership status of equipment which is utilized.

The form of the employment contract in the instant case was restricted to the transportation of the goods, the ownership of which had already been transferred to the purchaser. The contract did not provide for any of the trappings of employment. The vehicle was owned by Lugo–Acosta and Ortiz–Ramírez, and they, without consulting Nutrimix, substituted another vehicle for the one they normally used. The only element of the relationship that would indicate some stronger employment relationship is the requirements imposed by Nutrimix. Nutrimix required those trucking its sold goods to have general liability insurance, cargo insurance and authorization, as well as a proper licence to operate the vehicle. We find that these requirements on the part of Nutrimix only indicate a minimum requirement in order to ensure the safe transportation of sold goods and do not signify an employer-employee relationship sufficient to invoke independent contractor liability.

Furthermore, even if independent contractor liability was found, a series of events in this case took place which insert a high degree of unforeseeability into the incident that is the basis for this lawsuit. Nutrimix could not have foreseen that the contractors' truck would break down or that Alexis Lugo would replace it with an uninsured truck. Additionally, Nutrimix could not have foreseen the identity of that replacement truck and the location of the change from one truck to another. Nor could Nutrimix have foreseen the fact that there would be a potential problem with the entrance to the highway from the location where the truck was parked.

As the Puerto Rico Supreme Court stated in *Barrientos v. Gov. of the Capital,* 97 P.R.R. 539, 550 (1969), in order to be held liable for an act, the risk must have been foreseeable. *Lopez v. Cruz Ruiz* clarified the way in which an employer of an independent contractor might be liable: "[t]he fault or negligence that gives rise to the employ-

er's liability is the result of the failure to take the necessary precautions, given the particular risks of a project." *Lopez v. Cruz Ruiz,* 92 J.T.S. 130 at 9984. The court continued by stating that in that case, where a truck injured an individual in clearing a lot, that that project was not one in which risks were foreseeable by the municipality. "Neither did the fact that a truck was used in the land clearance operation add any special or peculiar risks or dangers." *Id.* at 9985. The court continued, assigning the injuries to the driver of the vehicle for his failure to take routine cautions. This, the court stated, "is the type of negligence for which the employer of an independent contractor is not liable." *Id.* at 9985 (citing *Martinez* 108 D.P.R. at 522).

Here, the only way that the Plaintiffs could attach liability to Nutrimix would be through Nutrimix's own possible foresight of the accident that ultimately occurred. The similarities between the instant case and that of *Lopez v. Cruz Ruiz* cannot be overlooked: The transportation of sold agricultural goods, like the clearing of a vacant lot, involves the use of one piece of machinery: a truck. Both are entirely routine endeavors, and cannot be considered to require an employer's consideration of special risk. Furthermore, as the facts in this case show, the events leading up to the accident shoot so far beyond the foreseeable that we cannot conceive of Nutrimix's fault in this accident. Even if Nutrimix's hired independent contractor were found completely liable, that liability would be his own responsibility, not that of his employer. We therefore grant Nutrimix's motion for summary judgment.

## IV.

### *General Accident's Motion for Partial Summary Judgment*

General Accident moves for summary judgment against Cabimar and PRAICO to grant the Third–Party Complaint filed against them in the instant case. General Accident bases its allegation on an agreement reached between the Puerto Rico Highway Authority, whose insurer is General Accident; Cabimar, the independent contractor

hired to perform the construction on Route No. 2 by the intersection in question; and PRAICO, the insurer of Cabimar for the reconstruction project. The Puerto Rico Highway Authority had been named in a Puerto Rico state court suit regarding the same accident that serves as the basis for the present case. *Heriberto Morales v. Nutrimix Feed Company, et al,* Civil No. IDP–95–0250 (205).

## A. Contractual Obligations

The issue is whether Cabimar and PRAICO are obligated, pursuant to their insurance contract with the Puerto Rico Highway Authority and the hold harmless agreement, to provide defense and coverage to the Puerto Rico Highway Authority in this litigation. We must determine whether Plaintiffs' allegations against Cabimar concern an act or omission that is covered by the insurance contract and hold harmless agreement between the Puerto Rico Highway Association, Cabimar and PRAICO.

 A hold-harmless agreement is one in which one party assumes all or part of the liability inherent in a situation, thereby relieving the other party of responsibility. The general rule is that parties may freely negotiate indemnity or hold harmless clauses so long as such agreements are not in violation of the law. *See Abelardo Torres Solis v. A.E.E.,* 94 J.T.S. 89, 1994 WL 909664 (1994). In analyzing contractual provisions, Puerto Rico courts look to whether "the intention of the parties is clear, conclusive and unequivocal." *Getty Refining & Marketing Co. v. Puerto Rico Ports Authority,* 531 F.Supp. 396 (D.P.R.1982); *see also* 31 L.P.R.A. § 4. Courts must give insurance policies a "practical, reasonable, and fair construction consonant with the apparent object and intent of the parties ... strained or forced constructions ... are to be avoided." 43 Am.Jur.2d *Insurance* § 2767 (1982). *See also Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir.1990). "Clear and explicit language is required in the contract to absolve a person from the consequences of his own conduct." *Alvarado Aviles v. Burgos, et al.,* 601 F.Supp. 29, 33 (D.P.R.1984) (quoting

*Cabrera v. Doval,* 76 P.R.R. 728, 731, 1954 WL 10805 (1954)).

## B. Analysis of Hold–Harmless Agreement

 The hold-harmless agreement at issue in this case, in relevant part, states: [W]hether such injuries, death, or damage result from or are claimed to have resulted from the negligence of the contractor, its officers, and agents or employees or of the subcontractor, their officers, agents or employees or whether resulting from or alleged to have resulted from, concurrent negligence of the owner, its officers, agent or employees and the contractor, its officers, agents or employees and or the subcontractors, their officers, agents or employees, and the contractor at his own expenses, shall defend any suit or action against the owner based on any such alleged injury, death or damage and shall pay all damages, costs and expenses, including attorney's fees, in connection therewith or in any manner resulting therefrom.

*Docket Document No. 70, Exhibit D.*

Plaintiffs claim that the Puerto Rico Highway Authority should be liable for its failure to close the intersection at which the accident occurred. Specifically, based on the foregoing agreement, General Accident alleges that the insurance policy issued for the reconstruction of Highway No. 2 obligates PRAICO to provide defense and coverage to the Puerto Rico Highway Authority and that a failure to do so constitutes a breach of that contract.

PRAICO and Cabimar argue that the Puerto Rico Highway Authority was responsible for the policy decision to keep the intersection open during and subsequent to the renovation, the act or omission at issue in this case. Defendants allege that the Puerto Rico Highway Authority issued an order on June 28, 1994, which changed the original contract to maintain the opening between kilometer 167 and 176.81, the site at which the accident occurred. On July 12, 1995, following the accident, the Puerto Rico Highway Authority issued a new order directing Cabimar to close said intersection before July 13, 1995. Given that the hold-harmless

agreement by PRAICO was to cover any damages resulting from Cabimar's own work and Cabimar is not responsible for the policy decision to keep the intersection open during and after the road construction, Defendants maintain that the hold-harmless agreement does not apply in this case.

It is undisputed that PRAICO, Cabimar, and the Puerto Rico Highway Authority freely entered into the contract for the reconstruction of Highway No. 2 in San Germán. However, the dispute is over which party should be held responsible for the absence of a divider between kilometer 167 and 176.81, the site in which the accident occurred. Thus, the issue for us to decide is whether the change in the original plans in this ongoing construction project was an action that it is covered by the insurance agreement.

The hold-harmless agreement at issue obligates Cabimar to "indemnify and save" the Puerto Rico Highway Authority for any losses "arising or in any manner growing out of or incident to the work performed or to be performed . . . ." (*Docket Document No. 70, Exhibit D*). It seems clear that the change to the original plan which kept the opening between kilometer 167 and 176.8 open for traffic is covered by the insurance agreement and hold-harmless clause. Such a decision is incidental to the work of reconstruction of the highway. While it is true that the Puerto Rico Highway Authority was the party responsible for ordering the opening to be maintained, Cabimar maintained said opening and the agreement between the parties covers all losses arising out of the reconstruction contract.

■ Plaintiffs additionally claim that even if Cabimar did not engage in an act or omission constituting negligence, the hold-harmless agreement covers negligence claimed or imputed to the Puerto Rico Highway Authority as an additional insured under the policy to Cabimar. PRAICO contends that the agreement does not cover negligence exclusively attributable to the Puerto Rico Highway Authority and not to its contractor, Cabimar.

The terms of this agreement are also unequivocally clear. The Puerto Rico Highway Authority is an additional insured "[w]ith respect to liability arising out of your operations or premises owned by or rented to you" under PRAICO's comprehensive general liability policy with Cabimar for the reconstruction of Highway No. 2 in San Germán project. (*Docket Document No. 70, Exhibit D* ). *Cf Fireman's Fund Ins. Companies v. American Intern. Ins. Co. of Puerto Rico, Inc.*, 109 F.3d 41 (1st Cir.1997) (holding that barge service corporation formed by stevedores and tug service was "additional insured" under stevedore's comprehensive general liability (CGL) policy only with respect to stevedoring contract, and not with respect to shareholders' agreement creating corporation). Thus, the insurance agreement covers any negligence in the reconstruction of Highway No. 2 project that may be imputed to the Puerto Rico Highway Authority.

We hold that the plain language of the insurance contract and hold-harmless agreement obligate PRAICO to provide defense and coverage to the Puerto Rico Highway Authority in this litigation. Even if the act or omission at issue in this case is not attributed to Cabimar, PRAICO is still obligated to provide defense and coverage to the Puerto Rico Highway Authority under the additional insured clause in the policy of the reconstruction of Highway No. 2 project. We, therefore, grant General Accident's motion for summary judgment.

## C. *Attorney's Fees*

■ General Accident also alleges that under the insurance contract and hold-harmless agreement, PRAICO is obligated to pay attorney's fees and costs of defending this motion. General Accident maintains that failure to provide defense and coverage constituted a breach of contract and, thus, by the terms of the contract, PRAICO should pay attorney's fees and costs and the refusal to do so constitutes bad faith denial of such defense and coverage.

The relevant clause in the hold harmless agreement states:

[A]nd the contractor at his own expenses, shall defend any suit or action against the owner based on any such alleged injury, death or damage[s] and shall pay all dam-

ages, cost and expenses including attorney's fees, in connection therewith or in any manner resulting therefrom.

*Docket Document No. 70, Exhibit D.* As we have found that the insurance contract and hold-harmless agreement apply to the case at bar, we find that General Accident is entitled to "costs and expenses including attorney's fees."

## V.

### *Conclusion*

We find that Plaintiffs have failed to state a cause of action for negligence under section 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141, and, therefore, **GRANT** Defendant Nutrimix's motion for summary judgment.

We find that the insurance contract and hold-harmless agreement obligate PRAICO to provide defense and coverage to the Puerto Rico Highway Authority in this litigation and, therefore, **GRANT** General Accident's motion for summary judgment. Additionally, General Accident is entitled to "costs and expenses including attorney's fees" under the insurance contract and hold-harmless agreement and, thus, will submit an itemized bill for all such costs and expenses to this court within **fifteen (15)** days from notice of this Order for determination of the amount to be paid.

We additionally grant Plaintiffs **ten (10)** days to readjust the pleadings by amendment or otherwise to conform to the present procedural situation arising from entry of this order.

**IT IS SO ORDERED.**