Carlos **FELICIANO RIVERA,**
**et al., Plaintiffs,**

v.

**MEDICAL & GERIATRIC ADMINISTRATIVE SERVICES, INC.,**
**et al., Defendants.**

**No. CIV. 02–1367(PG).**

United States District Court,
D. Puerto Rico.

March 27, 2003.

Jaime A. Lamboy–Riley, Edif. Arroyo, San Juan, PR, for Plaintiffs.

Hector F. Oliveras–Delgado, Isabel M. Guillen–Bermudez, Pinto–Lugo, Oliveras & Ortiz, PS, Vanessa Viera–Rabelo, Vanessa Viera–Rabello Law, Offices, Luis E. Pabon–Roca, Faccio & Pabon Roca, Fernandez Juncos Station, Clarisa Sola–Gomez, San Juan, PR, for Defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is Defendant Medical & Geriatric Administrative Services' Motion for Summary Judgment. (Mot. Summ. J., Docket No. 13). Because Plaintiff did not file an opposition to Defendant's Motion for Summary Judgment, it is considered unopposed. For the reasons stated below, Defendant's Motion is **GRANTED.**

## BACKGROUND

Plaintiffs Carlos Feliciano Rivera, Aida Luz Gracia Rivera, and their Conjugal Partnership filed this suit against Defendants Medical Geriatric Administrative Services, Inc. ("Medical & Geriatric"), the Municipality of Toa Alta ("Toa Alta"), ABC Insurance (the fictitious name assigned to the insurance company covering Medical & Geriatric), John Doe (the fictitious name assigned to the doctor assigned to the emergency room of the CDT), and DEF Insurance (the fictitious name assigned to the insurance company covering John Doe), claiming damages under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (West Supp.2002), and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141. (Am. Compl., Docket No. 23). Plaintiffs claim that on March 9, 2001, Plaintiff Carlos Feliciano Rivera arrived at the emergency room of the Diagnostic and Treatment Center in the Municipality of Toa Baja (the "CDT," for its Spanish acronym) with an open wound to his left knee, but was refused medical attention when he informed the CDT personnel that he had no medical insurance. (Am.Compl.¶¶ 10–18). Plaintiff Feliciano Rivera allegedly suffered physical and emotional damages due to the CDT's refusal to provide him medical attention. (Am.Compl.¶¶ 19–23).

## SUMMARY JUDGMENT STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is one that is dispositive and must be resolved at trial because a reasonable jury could resolve in favor of the non-moving party. *Arvelo v. American International Insurance Co.,* 875 F.Supp. 95, 99 (D.P.R.1995). Moreover, a fact is material if under applicable substantive law it may affect the result of the case. *See Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir. 1990).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Once a moving party has made a showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to demonstrate that a trial worthy issue remains. *See Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997); *Borschow Hosp. & Med. Supplies Inc., v. Cesar Castillo, Inc.,* 96 F.3d 10,14 (1st Cir.1996). The non-moving party must set forth specific facts in proper evidentiary form substantiating that a genuine factual issue exists for trial. Nevertheless, in determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989).

Under the Local Rules of this Court, if a party fails to oppose a motion for summary judgment "[a]ll materials facts set forth in the statement required to be served by the moving party shall be deemed to be admitted." U.S.D.C. Local Rule 311(12). But "summary judgment is not granted automatically merely because of the adverse party's failure to file an opposition." *Mendez v. Banco Popular de Puerto Rico,* 900 F.2d 4, 7 (1st Cir.1990). When no opposition is filed to a summary judgment motion, the nonmoving party does waive the right to object to the material facts set forth by the movant and the "motion will be decided on the basis of the movant's submissions." *F.C. Imports, Inc. v. First Nat'l Bank of Boston, N.A.,* 816 F.Supp. 78, 86–87 (D.P.R.1993). Ultimately, "[w]hether or not opposed, summary judgment can only be granted 'if the pleadings, depositions, answers, interrogatories, and admissions together with the affidavits if any, show that is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mendez,* 900 F.2d at 7.

### DISCUSSION

Congress enacted the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (West Supp.2002), to allay the concern that hospital emergency rooms were refusing to treat uninsured patients. *See Correa v. Hospital San Francisco,* 69 F.3d 1184, 1189 (1st Cir.1995). "Needing a carrot to make health-care providers more receptive to the stick," Congress conditioned "hospitals' continued participation in the federal Medicare program—a lucrative source of institutional revenue—on acceptance of the duties imposed by the new law." *Id.* at 1189–90. EMTALA has two main provision. "First, it requires that a participating hospital afford an appropriate medical screening to all persons who come to its emergency room seeking medical assistance. Second, it requires that, if an emergency medical condition exists, the participating hospital must render the ser-

vices that are necessary to stabilize the patient's condition, unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety" *Id.* at 1190 (citations omitted).

■ EMTALA provides a private cause of action for damages against "participating hospitals" who violate the Act's requirements. *See* 42 U.S.C. § 1395dd(d)(2)(A) ("Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."). The statute does not create a "general federal cause of action for medical malpractice," however, nor is it "a substitute for state-law malpractice actions." *Hunt ex. rel. Hunt v. Lincoln County Mem'l Hosp.*, 317 F.3d 891, 894 (8th Cir.2003). Thus, EMTALA does not provide a private cause of action against physicians or physicians' medical corporations. *See Medero Diaz v. Grupo De Empresas De Salud*, 112 F.Supp.2d 222, 225 (D.P.R.2000); *see also Gerber v. Northwest Hosp. Ctr., Inc.*, 943 F.Supp. 571, 575–76 (D.Md.1996).

■ A plaintiff suing under EMTALA must show, as a threshold matter, that "the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility)." *Correa*, 69 F.3d at 1190; *see also* 42 U.S.C. § 1395dd(a) ("In the case of a hospital that has a hospital emergency department . . . ."). The statute defines a "participating hospital" as one that has entered into a service agreement with Medicare. *See* 42 U.S.C. § 1395dd(e)(2); *see also Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1260 n. 6 (9th Cir.2001); *Medero Diaz*, 112 F.Supp.2d at 225.

In the case at hand, there is sufficient evidence to dismiss the claims against some of the Defendants before considering Defendant's Medical & Geriatric's argument that the CDT is not a participating hospital under EMTALA. Because EMTALA does not provide a cause of action against individual physicians, the claims against John Doe and DEF Insurance must be dismissed for failure to state a claim upon which relief can be granted.

■ Defendant's main claim is that the CDT does not qualify as a "participating hospital" under EMTALA because it is not a hospital and, as such, does not have an emergency care department. (Mot. Summ. J., at 7). To determine whether the CDT qualifies as a hospital the Court turns to the definitions provided in the Social Security Act, 42 U.S.C. § 1395x(e), which apply to EMTALA. *See Jackson*, 246 F.3d at 1260 (referring to the definition of "hospital" in 42 U.S.C. § 1395x(e) to determine whether a defendant qualified as a "hospital"); *cf. Correa*, 69 F.3d at 1189 (explaining that in enacting EMTALA Congress amended the Social Security Act). § 1395x(e) defines a hospital as an institution that,

(1) is primarily engaged in providing, by or under the supervision of physicians, to inpatients (A) diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons;

(2) maintains clinical records on all patients;

(3) has bylaws in effect with respect to its staff of physicians;

(4) has a requirement that every patient with respect to whom payment may be made under this subchapter must be under the care of a physician . . . ;

(5) provides 24–hour nursing service rendered or supervised by a registered professional nurse, and has a licensed practical nurse or registered professional nurse on duty at all times . . .;

(6) (A) has in effect a hospital utilization review plan which meets the requirements of subsection (k) of this section and (B) has in place a discharge planning process that meets the requirements of subsection (ee) of this section;

(7) in the case of an institution in any State in which State or applicable law provides for the licensing of hospitals, (A) is licensed pursuant to such law or (B) is approved, by the agency of such State or locality responsible for licensing hospitals, as meeting the standards established for such licensing;

(8) has in effect an overall plan and budget that meets the requirements of subsection (z) of this section;

(9) meets such other requirements as the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services in the institution.

42 U.S.C. § 1395x(e).

Since Plaintiffs did not oppose Defendant's Motion for Summary Judgment, they did not provide any evidence showing that the CDT qualifies as a "participating hospital." Defendant's, however, did provide sufficient facts to show that the CDT is not a participating hospital under EMTALA, and these fact are deemed admitted pursuant to Local Rule 311(12).

First, the CDT does not comply with many of the requirements for a "hospital" under § 1395x(e). The CDT does not provide services to inpatients. As Puerto Rico Law 101 states, diagnostic or treatment centers provide services to *ambulatory patients.* 24 P.R. Laws Ann. § 331a. Defendant submitted a sworn statement by Dr. Victor Díaz Guzmán, Executive Director of Medical & Geriatrics Administra-

tive Services, Inc., who confirmed that the CDT does not have the facilities or capabilities to admit, or provide rehabilitation services to, inpatients. (Mot. Summ. J., Ex. 2 ¶¶ 3–4). Neither does the CDT comply with § 1395x(e)'s requirement of 24–hour nursing service. Nurses are available at the CDT only during regular operating hours, and even then only "for purposes of taking vital signs and assisting physicians." (Mot. Summ. J., Ex. 2 ¶ 7). The CDT does not have the hospital utilization plan required in § 1395x(e)(6). (Mot. Summ. J., Ex. 2 ¶ 8).

Second, Puerto Rico law clearly distinguishes between hospitals and diagnostic and treatment centers. Both Law 101 of June 26, 1965, 24 P.R. Laws Ann. § 331(4), and Law 2 of November 7, 1975, 24 P.R. Laws Ann. § 334(i), define a diagnostic and treatment center as "an independent facility or one operated in conjunction with a hospital" that provides health services to "ambulatory patients." Dr. Díaz Guzmán's sworn statement averred that the CDT is not licensed by the Commonwealth of Puerto Rico as a hospital. (Mot. Summ. J., Ex. 2 ¶ 9).

Not being a hospital, the CDT cannot have a "hospital emergency department" as required and described in § 1395dd(a). Dr. Díaz Guzmán stated as much, declaring that the CDT did not operate "a hospital based or hospital attached emergency department." (Mot. Summ. J., Ex. 2 ¶ 11). A newsletter published by the Health Care Financing Administration also supports this contention; it stated that for the purposes of Medicare, Diagnostic and Treatment Centers "are not to be classified in Puerto Rico as an Emergency Room unless they are attached or hospital based." (Mot. Summ. J., Ex. 3, at 3).

Because the Court finds that the CDT is not a "participant hospital" under EMTALA, the claims against Medical & Geriat-

rics as the administrator and Toa Baja as the owner of the CDT should be dismissed. Defendant's Motion for Summary Judgment being unopposed, and Defendant having provided sufficient evidence that there is no genuine issue of fact and that it is entitled to judgment as a matter of law, Defendant's Motion is **GRANTED**.

**SO ORDERED**.