**Nelly Ocasio OCASIO, et als., Plaintiffs**

v.

**HOGAR GEOBEL INC.,**
**et als., Defendants.**

**Civil No. 06–2041 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 25, 2008.

Angelique Doble–Bravo, Gallart Law Office, San Juan, PR, for Plaintiffs.

Eduardo Castillo–Blanco, Ivan M. Fernandez Law Office, San Juan, PR, for Hogar Geobel Inc.

Jose R. Cintron–Rodriguez, San Juan, PR, for Puerto Rico Electric Power Authority.

### *OPINION AND ORDER*

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is defendant, Hogar Geobel Inc., and third party defendant, Jesus M. Guadalupe's *Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 32), Plaintiffs' *Opposition to Summary Judgment* (Docket No. 35), and defendant, Hogar Geobel Inc., and third party defendant, Jesus M. Guadalupe's *Reply to Opposition to Summary Judgment* (Docket No. 40).

On April 14, 2008, the Court referred the pending motions to Magistrate Judge Marcos E. Lopez (Docket No. 41). On August 11, 2008, the Magistrate Judge entered a *Report and Recommendation* (Docket No. 46). After and excellent and exhaustive analysis, the Magistrate Judge recommended that the request for summary judgment be granted. Consequent-ly, on August 18, 2008, Plaintiffs filed their *Objection to Report and Recommendation* (Docket No. 47), and on August 19, 2008, defendant, Hogar Geobel Inc., and third party defendant, Jesus M. Guadalupe's filed a *Reply to Plaintiffs' Objection to the Magistrate's Report and Recommendation* (Docket No. 48).

### I. Brief Factual Background

The Plaintiffs in the instant case filed a Complaint alleging on June 26, 2003 Plaintiff's husband, Eduardo Flores Garcia, while working on the improvements to the second-story level of Hogar Geobel, came into contact with certain power lines. As a result of said contact, Mr. Flores lost his balance, fell from the second floor and died as a result of the fall. Plaintiffs further allege that defendant, Hogar Geobel as the property owner, is severally liable to Plaintiffs for failing to provide its contractors with a safe work place and by requiring Mr. Flores to work in an area where he could come in contact with electric power lines and provoke a fall like the one that caused Mr. Flores death.[1]

After reviewing the instant case's record, and reviewing de novo, Plaintiffs' objections to the Magistrate Judge's Report and Recommendation, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate's *Report and Recommendation* (Docket No. 46), to the instant Opinion and Order.

### II. Standard of Review

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46

---

1. The Court further adopts the factual scenario recapitulated by the Magistrate Judge at Docket No. 46, pg. 2–5.

L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. See Local Rule 72(d); FED. R. CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

(Emphasis ours).

■ If no objections are filed against a Magistrate Judge's Report and Recommendation, the Court, in order to accept the unopposed R & R, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. See *Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir., 1996) (en banc)(extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir., 1982) (en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R., 2001) ("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED.R.CIV.P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa., 1990) ("when no objections are filed, the district court need only review the record for plain error").

■■ "Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985) (emphasis ours). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir., 1992). See also *Sands v. Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994)(holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir., 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). See also *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

Since Plaintiffs have timely objected (Docket No. 47), we are required to review those objected matters **de novo.** 28 U.S.C. § 636(b)(1); *Borden v. Secretary of H.H.S.,* 836 F.2d at 6.

### III. Summary Judgment Standard

Summary judgment is **appropriate** when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodríguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir., 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir., 1997). A fact will be deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

Local Rule 56 for the District of Puerto Rico, clearly states that if a party fails to oppose a motion for summary judgment "[a]ll material facts set forth in the statement required to be served by the moving party shall be deemed to be admitted." Local Rule 56. This does not mean, however, that summary judgment will be granted automatically, just because the defendant failed to file an opposition. *Méndez v. Banco Popular de Puerto Rico,* 900 F.2d 4, 7 (1st Cir., 1990). "If the adverse party does not so respond, summary judgment, **if appropriate,** shall be entered against the adverse party." Fed. R.Civ. P.56(e); *see also NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7–8 (1st Cir., 2002) (*Emphasis added*). Although summary judgment is not granted automatically "the nonmoving party does waive the right to object to the material facts set forth by the

movant." *Feliciano–Rivera v. Medical & Geriatric Admin. Serv.,* 254 F.Supp.2d 237, 239 (D.P.R., 2003). However, notwithstanding that there is no opposition to a summary judgment, or counter summary judgment request, the Court must entertain the motion on the merits and may not grant the same as a sanction even if there is no opposition on file. *de la Vega v. San Juan Star,* 377 F.3d 111 (1st Cir., 2004).

## IV. Analysis

After reviewing all of the pending motions and reviewing **de novo** the portions of the Magistrate Judge's Report and Recommendation to which the Plaintiffs have expressed objections, the Court agrees *in toto,* with the findings and recommendations made by Magistrate Judge Marcos E. Lopez. The Court finds that after taking into consideration all of Plaintiffs' objections, the Court has arrived at the same conclusions as those reached by Magistrate Judge Marcos E. Lopez in his Report and Recommendation. The Court briefly explains and clarifies.

The Court agrees with the Magistrate's conclusion that despite the absence of justification to grant summary judgment on the basis of the type of contractual relationship between third party defendant, Jose Alberto Cruz and those who hired him, "no rational jury can find for the plaintiffs based on the allegations of the complaint." *See* Docket No. 46, pg. 19. Furthermore, the Court agrees with the Magistrate Judge's finding that

> although the complaint alleges that defendant, Geoble is "severally liable to plaintiff for not providing its contractors with a safe work place," this allegation is made in the context of "requiring Flores Garcia to work in an area where he could come in contact with power lines and provoke a fall . . ."

*See Id.,* pg. 19, FN. 9 (quoting Docket No. 1, ¶ 12).

■ **Especially, when it is uncontested that Mr. Flores did not come at any point in contact with an electric power line located on the boundary of the property that Mr. Flores was working on.** Furthermore, there are no other allegations in the Complaint other than, Mr. Flores' fall was caused by the contact with an electric power line. Moreover, the Court finds that since the instant case is at the summary judgment stage, after almost two years of having been filed, "the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *See Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir.2005).

> The Federal Rules of Civil Procedure therefore provide for liberal notice pleading at the outset of the litigation because "[t]he provisions for discovery are so flexible" that, by the time a case is ready for summary judgment, "the gravamen of the dispute [has been] brought frankly into the open for inspection by the court." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (noting that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims") (citation and quotation marks omitted).

> Once a case has progressed to the summary judgment stage, therefore, "the liberal pleading standards under *Swierkiewicz* and [the Federal Rules] are inapplicable." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); see also *10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2723 (3d ed. Supp.2005) ("A non-moving party plaintiff may not raise a new legal claim for

the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

To permit a plaintiff to do otherwise would subject defendants to unfair surprise. See *Guiffre v. Local Lodge No. 1124*, No. 90–3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery"); see also *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir.2001) (stating that even under the liberal notice-pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the defendant fair notice of the claim and its supporting facts").

See *Id.*; see also *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996)("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")(citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

## V. Conclusion

Therefore, after reviewing **de novo** the portions of the Magistrate Judge's Report and Recommendation to which the Plaintiffs have expressed objections, and being in total agreement with the findings and recommendations made by Magistrate Judge Marcos E. Lopez, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate's *Report and Recommendation* (Docket No. 29), to the instant Opinion and Order. Consequently, defendant, Hogar Geobel Inc., and third party defendant, Jesus M. Guadalupe's

*Motion for Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 32), is hereby **GRANTED.**

This case is hereby **DISMISSED without PREJUDICE.**

The Court hesitates to dismiss the instant case with prejudice as there is a potential amendment to the Complaint that has been alleged based on implied allegations contained in Plaintiffs' motion in opposition to Defendants' motion for summary judgment, that no railings were in place and/or lack of training to the employees, resulting in Mr. Flores' fall. These allegations are not contained within the four corners of the Complaint, they were made almost two years after the filing of the Complaint, in response to a summary judgment motion. Notwithstanding, Plaintiff must pause to analyze the potential amendment since the allegations would require a totally new theory involving the retaining of an expert witness.

Furthermore, and most critical, there is evidence that although the Contractor explicitly offered safety equipment that would have prevented Mr. Flores' fall, he apparently rejected the use of the safety equipment. In other words, Mr. Flores apparently incurred in a significant contributory negligence that should he have heeded could have saved his life. Nevertheless, Mr. Flores' "negligence, if any, [could] result in a reduction of the indemnity that may be awarded to plaintiffs, but does not necessarily exempt [the defendants] from liability." *See* Docket No. 46, pg. 16, FN. 7 (*emphasis ours* ).

For said reason, the Court grants Plaintiffs sixty (60) days to attempt to reopen the instant case by showing good cause as to why the instant case should be reopened and why leave should be granted to file an Amended Complaint.

Judgment shall be entered accordingly. **THIS CASE IS HEREBY CLOSED FOR ALL ADMINISTRATIVE AND STATISTICAL PURPOSES.**

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

MARCOS E. LÓPEZ, United States Magistrate Judge.

**I. PROCEDURAL BACKGROUND.**

On October 13, 2006, plaintiffs Nelly Ocasio Ocasio ("Ocasio Ocasio"), by herself and on behalf of her minor children Enid Zoraida Flores Ocasio, Eduardo Carlos Flores Ocasio, Nellys Marie Flores Ocasio, Nellys Odalis Ocasio and Iris Nereida Ocasio, filed the complaint in this case against: (1) Hogar Geobel Inc., ("Geobel"); (2) Puerto Rico Electric Power Authority ("PREPA"); and (3) ABC Insurance Co. and XYZ Insurance Co., as unknown insurance companies who had "public liability insurance policies issued and outstanding" on behalf of PREPA and Geobel. (Docket No. 1, ¶¶ 1–5.)[1] The complaint requests damages, presumably pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142.[2] Federal jurisdiction is premised on the diversity statute. 28 U.S.C. § 1332. PREPA and Geobel answered the complaint on March 26 and 27, 2007, respectively. (Docket Nos. 10, 11.)

On April 28, 2007, PREPA filed a third party complaint against Jesús M. Guadalu-

---

**1.** According to the complaint, Enid Zoraida, Eduardo Carlos and Nellys Marie Flores Ocasio are all the minor children of Ocasio Ocasio and Eduardo Flores García ("Flores García"), while Nellys Odalis and Iris Nereida Ocasio are Ocasio Ocasio's minor daughters who had been raised by Flores García. (Docket No. 1, ¶ 2.)

**2.** Plaintiffs do not specifically state in the complaint under which statute they bring their claims.

pe Hernández ("Guadalupe") and José Alberto Cruz ("Cruz") alleging that they, not PREPA, are directly liable to plaintiffs for the damages requested in the complaint. (Docket No. 14.) Guadalupe answered the third party complaint on July 6, 2007. (Docket No. 23.) On August 27, 2007, default was entered as to Cruz for his failure to answer the third party complaint or otherwise plead in this case. (Docket No. 26.) As of today, Cruz has not appeared in this case.

On January 28, 2008, plaintiffs filed a Stipulation for Dismissal, requesting the court to enter a partial judgment dismissing all claims against PREPA "without prejudice and without the imposition of costs or attorneys fees." (Docket No. 31.) Said stipulation is still pending before the court's consideration.

On January 30, 2008, Geobel and Guadalupe moved for summary judgment. (Docket No. 32.) Plaintiffs opposed the request for summary judgment on March 10, 2008, and Geobel and Guadalupe replied on March 13, 2008. (Docket Nos. 35, 40.)

On April 14, 2008, the court referred to the undersigned Geobel's and Guadalupe's motion for summary judgment and all other related and pending motions for a report and recommendation. (Docket No. 41.)

## II. Factual Background.

The following material facts are not in genuine issue or dispute pursuant to the stipulations and supporting evidence submitted by the parties:

1. Guadalupe, president and principal of Geobel, is the owner of and resides in a property located at 1013 Carmen Buzello St., Country Club Development, Río Piedras, Puerto Rico. (Docket No. 32, at 3, ¶ 1; Docket No. 35, § II, ¶ 1, and § III, ¶¶ 1, 4; Docket No. 40, ¶¶ 1, 4.)

2. Geobel operated an elderly citizens home at 1013 Carmen Buzello St., Country Club Development, Río Piedras, Puerto Rico. (Docket No. 32, at 3, ¶ 2; Docket No. 35, § II, ¶ 2.)

3. Flores García, Ocasio Ocasio's husband, was a non-skilled construction worker who together with other persons was employed by Cruz to carry out improvements on the property located at 1013 Carmen Buzello St., Country Club Development, Río Piedras, Puerto Rico. (Docket No. 32, at 3, ¶ 3; Docket No. 35, § II, ¶ 3.)

4. No construction permits were issued by the Puerto Rico Planning Board and the Puerto Rico Regulations and Permits Administration. (Docket No. 35, § III, ¶ 3; Docket No. 40, ¶ 3.)

5. On June 26, 2003, Flores García was working on the roof top of the second story of the property located at 1013 Carmen Buzello St., Country Club Development, Río Piedras, Puerto Rico. While working on the roof, Flores García fell to the ground, landing on the rear patio of a neighbor's property. Flores García died as a result of the fall. (Docket No. 32, at 3, ¶¶ 4–6; Docket No. 35, § II, ¶¶ 4–6.)

6. At the time the accident occurred, the construction work had been underway for at least two weeks. (Docket No. 35, § III, ¶ 7; Docket No. 40, ¶ 7.)

7. During that time, Guadalupe never saw any of the workers wearing any kind of safety equipment such as gloves, helmets and ropes to fasten themselves. (Docket No. 44–5, Guadalupe's depo., page 36, line 18 to page 37, line 7.)

8. Cruz was not an insured employer under Puerto Rico's Workmen's Compensation Act, Puerto Rico Law No. 45 of April 18, 1935, P.R. Laws Ann. tit. 11, § 7. Also, neither Guadalupe nor Geobel were insured under Puerto Rico's Workmen's Compensation Act, and Guadalupe never

requested to Cruz evidence that Cruz had obtained such insurance. (Docket No. 32, at 3, ¶ 7; Docket No. 35, § II, ¶ 7 and § III, ¶ 5; Docket No. 40, ¶ 5.)

9. The Occupational Safety and Health Administration ("OSHA") conducted an investigation of Flores García's accident. As a result of the investigation, OSHA fined Cruz for failing to provide a guard rail system. (Docket No. 32, at 3, ¶¶ 8–9; Docket No. 35, § II, ¶¶ 8–9.)

10. Cruz, as employer of Flores García, failed to provide a training program for each employee who might have been exposed to a fall hazard. (Docket No. 32, at 3, ¶ 10; Docket No. 35, § II, ¶ 10.)

11. Flores García did not come at any point in contact with an electric power line located on the boundary of the property located at 1013 Carmen Buzello St., Country Club Development, Río Piedras, Puerto Rico. Said electric power line was clearly visible from any point in the roof in which Flores García was working. (Docket No. 32, at 4, ¶¶ 11–12; Docket No. 35, § II, ¶¶ 11–12.)

12. Guadalupe and Cruz executed a Construction Agreement dated July 30, 2003, whereby it was agreed that Cruz would build an annex on the second story of said property for the amount of ten thousand dollars. This amount included material and labor. The parties also agreed to obtain the insurance provided by the State Insurance Fund and to share its cost equally among themselves. (Docket No. 44–4.) [3]

### III. SUMMARY JUDGMENT STANDARD.

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c), 28 U.S.C.; *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c), 28 U.S.C. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Anderson v. Liberty Lobby, Inc.*,

---

**3.** Although the parties have submitted another "construction agreement", also dated July 30, 2003, the same is signed by Cruz only. (Docket No. 44–2)

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)...." *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987).

## IV. LEGAL ANALYSIS.

### A. Overview of Puerto Rico tort law.

Plaintiffs' claims for damages are governed by the tort provisions of Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, §§ 5141, 5142. *See generally Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Article 1802 provides that: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the

indemnity." P.R. Laws Ann. tit 31, § 5141. Article 1803 provides, in relevant part, that: "The obligation imposed by the preceding section is demandable, not only for personal acts or omissions, but also for those of the persons for whom they should be responsible." *Id.,* § 5142.

"Article 1802 is Puerto Rico's basic tort statute." *Matos Ortíz v. Commonwealth of Puerto Rico,* 103 F.Supp.2d 59, 63 (D.P.R.2000). It imposes liability on any person or entity who by an act or omission causes damages to another through fault or negligence. *See* P.R. Laws Ann. tit. 31, § 5141; *Valle v. American Int'l Ins. Co.,* 108 D.P.R. 692 (1979). The Supreme Court of Puerto Rico has stated that "damage is any material or moral loss suffered by a person, either in their rights or property, brought about by a violation of a legal provision chargeable to another party." *Santini Rivera,* 137 D.P.R. at 7 (*citing García Cabán v. Shiley Caribbean,* 122 D.P.R. 193 (1988)); J. Santos Briz, *La Responsabilidad Civil* 126, Madrid, Ed. Montecorvo (2d ed.1977); 24 M. Albaladejo, *Comentarios al Código Civil y compilaciones forales* 156, Madrid, Ed. Edersa (1984); H. Brau, *Los daños y perjuicios extracontractuales en Puerto Rico* 427, San Juan, Pub. J.T.S. (2d ed.1986).

In order to prevail in a cause of action for fault or negligence, a plaintiff must establish three essential elements: (1) evidence of physical or emotional injury; (2) a negligent or intentional act or omission (the breach of duty element); and (3) a sufficient causal nexus between the injury and defendant's act or omission (*i.e.,* proximate cause). *Vázquez–Filippetti v. Banco Popular de Puerto Rico,* 504 F.3d 43, 49 (1st Cir.2007); *see also Santini Rivera v. Serv. Air, Inc.,* 137 D.P.R. 1, 6 (1994); *Hernández v. Fournier,* 80 D.P.R. 93, 96–97 (1957).

"Not all actions or omissions which result in injury will give rise to liability

under Article 1802." *Lang v. Corporación De Hoteles, S.A.*, 522 F.Supp.2d 349, 365 (D.P.R.2007). "Negligence has been defined by the Puerto Rico courts as 'the failure to exercise due diligence to avoid foreseeable risks.'" *De–Jesús–Adorno v. Browning Ferris Industries of Puerto Rico, Inc.*, 160 F.3d 839, 842 (1st Cir.1998) (*citing Malavé–Félix v. Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir.1991) (*citing Jímenez v. Pelegrina*, 112 D.P.R. 700 (1982))). "Accordingly, liability will only arise if the damages were reasonably foreseeable to the defendant, that is, when the defendant's negligence is the proximate cause of plaintiff's injuries." *Lang*, 522 F.Supp.2d at 366 (*citing De–Jesús–Adorno*, 160 F.3d 839 (1st Cir.1998); *Vda. de Delgado v. Boston Insurance Co.*, 99 D.P.R. 714, 723 (1971)). "The term 'proximate cause' refers to that which ordinarily produces the harm in question, according to general experience." *Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of Puerto Rico*, 999 F.Supp. 213, 225 (D.P.R.1998) (*citing Cárdenas Maxán v. Rodríguez*, 125 D.P.R. 702, 710 (1990); *Sociedad De Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974)).

■ Foreseeability is an element of both breach of duty and proximate cause. *Vázquez–Filippetti*, 504 F.3d at 49. "In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." *Id.* "[A] defendant only breaches this duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." *Id.* Thus, "[t]he foreseeability contemplated by [Article 1802] does not include every conceivable consequence of an act or omission, since to do so would make the defendant an absolute insurer." *Lang*, 522 F.Supp.2d at 366 (*citing Pacheco v. A.F.F.*, 112 D.P.R. 296, 300 (1982); *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700,

704 (1982)). "To establish the foreseeable character of an event, the evidence must be such that the fact finder can rationally conclude that the risk complained of is in the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances." *Lang*, 522 F.Supp.2d at 366 (*citing Paycheck v. Puerto Rico Water Resources Auth.*, 112 D.P.R. 367, 372 (1982); *Jiménez*, 112 D.P.R. at 704). Furthermore, "[p]laintiffs must not only prove that the injury was reasonably foreseeable, but also that it could have been avoided had defendant acted with care." *Lang*, 522 F.Supp.2d at 366 (*citing Woods–Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 124 F.3d 47, 51 (1st Cir.1997)).

■ In negligence cases, a court should be cautious in using the summary judgment device, inasmuch determinations of foreseeability and of whether a defendant acted reasonably fall within the province of the jury. *Chapman v. E.S.J. Towers, Inc.*, 803 F.Supp. 571, 575 (D.P.R.1992) (*citing TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 n. 12, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); 10 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2729); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990); *see also Guillemard–Noble v. Sánchez–Rodríguez*, 932 F.Supp. 45 (D.P.R.1996) (finding genuine issues of material fact precluding summary judgment existed as to whether supervisor should have foreseen that project posed potential danger to traffic on road); *Díaz Irizarry v. Ennia, N.V.*, 678 F.Supp. 957, 959 (D.P.R.1988) ("The question of foreseeability is for the jury. Because it is an evaluative application. of a legal standard to the facts, a reasonable difference of opinion might exist and the jury must decide.... Though under Puerto Rico law the judge decides foreseeability issues, federal law controls the division of responsibility between the judge and the jury.... Federal law mandates that fore-

seeability is a decision for the jury.") (internal citations omitted).

With this framework in mind, the court proceeds to consider Guadalupe's and Geobel's request for summary judgment.

## B. Guadalupe's and Geobel's liability under Articles 1802 and 1803.

■ In this case, Guadalupe's and Geobel's request for summary judgment essentially alleges that they are not liable under Article 1802 and 1803 because there is no proximate cause between Geobel's and Guadalupe's actions and Flores García's accident, inasmuch Geobel "did not have any participation whatsoever" in the construction work being performed on Guadalupe's property and because Guadalupe's "only participation was executing a contract with Cruz for the improvement of the second story of said property." (Docket No. 32, at 21.) Guadalupe and Geobel further allege that Guadalupe "was not in charge of the construction site nor was he in charge of providing safety programs (seminars) or equipment for Cruz's employees", that providing these precautionary measures was Cruz's responsibility, and that Flores García knew that safety equipment provided by Cruz was available but chose not to use it. *Id.* at 7. Thus, at the end of the day, Guadalupe and Geobel argue that Flores García's accident is the result of his own negligent acts and omissions, as well as Cruz's.

■ "As a general rule, a person is only liable for his own acts or omissions and only by exception is a person liable for the acts or omissions of others." *Burgos–Oquendo v. Caribbean Gulf Refining Corp.,* 741 F.Supp. 330 (D.P.R.1990) (citing *Vélez v. Llavina,* 18 D.P.R. 656 (1912)). Thus, "[t]he imposition of tort liability for the actions of a third party arises only under certain exceptional circumstances." *CMI Capital Market Investment, LLC v. Municipality of Bayamón,* 410 F.Supp.2d

61, 75 (D.P.R.2006) (citing P.R. Laws Ann. tit. 31, § 5142; *Pons Anca v. Engebretson,* 160 D.P.R. 347 (2003) (principal's liability for acts of independent contractor an exception to rule that duty to remedy injuries arises from one's own acts or omissions)).

Article 1803 of the Puerto Rico Civil Code enumerates the situations in which vicarious responsibility is applicable. The Supreme Court of Puerto Rico has stated that said enumeration "is limitative and is not a mere collection of examples." *Torres Pérez v. Lopéz,* 113 D.P.R. 72, 76 (1982). These exception are: (1) the liability of the father or mother for the damage caused by minor children; (2) of guardians for the damage caused by the persons under their authority who live with them; (3) of employers for the damage caused by an employee acting in the course of his employment; (4) of masters or directors of arts and trades for the damage caused by their pupils or apprentices, and (5) of the government of the Commonwealth of Puerto Rico under certain pre-established circumstances. 31 P.R. Laws Ann. tit. 31, § 5142.

In order to examine whether Guadalupe and Geobel may be liable under Articles 1802 and 1803, the court must first examine the nature and extent of the contractual relationship between Guadalupe, Geobel and Cruz to ascertain whether Guadalupe and Geobel may be held accountable for Cruz's alleged negligent actions and/or omissions with respect to Flores García. Guadalupe and Geobel allege that Cruz was hired as an independent contractor, that the construction agreement did not create an "employer-employee relation" between Guadalupe and Cruz and, therefore, that Guadalupe is not liable for the damages caused to Flores García. (Docket No. 40, ¶ 2, and page 3.)

Plaintiffs oppose the request for summary judgment asserting that Guadalupe

and Geobel, "as principal [sic] and owner [sic] of the works performed on the Carmen Buzello property[,] they are considered Flores [García's] statutory employers and as such had the same duty of care that Cruz had towards Flores [García] and the other construction employees and thus are jointly liable for the damages suffered by Flores [García]." (Docket No. 35, at 1.) Thus, plaintiffs implicitly allege that Cruz and, consequently, Flores García, were employees of Guadalupe and Geobel.

■■■■ The question of whether an individual is an employee as opposed to an independent contractor must be analyzed on a case-by-case basis, as there is no precise definition for the term "independent contractor." *Rivera v. Hospital Universitario,* 762 F.Supp. 15, 17 (D.P.R. 1991); *Mariani v. Christy,* 73 D.P.R. 782, 797 (1952).[4] Therefore, several general factors guide courts in making the determination of whether a party is an independent contractor. Generally, these factors include: (1) the form and manner of the employment contract concerning provisions of full-time or part-time employment; (2) whether the employment contract provides for vacation time, sick leave, or a retirement program; (3) the extent an nature of control the individual has over the execution of his duties; (4) the form of payment; and (5) the ownership status of equipment which is utilized. *Rivera v. Hospital Universitario,* 762 F.Supp. at 17. Although no single factor is sufficient by itself to establish an individual as an independent contractor *(see id.),* the third factor is a particularly crucial element to this determination:

[T]he most important criteria in the determination of an employee status, *vel non,* is the control the employer may have over the work performed, regardless of whether or not said control is exercised. It is the existence of the right or authority to so intervene or control on the part of the employer or principal that makes the other person an employee and not an independent contractor.

*Lugo v. Matthew Bender & Co., Inc.,* 579 F.Supp. 638, 642 (D.P.R.1984); *see also Nieves v. Univ. of Puerto Rico,* 7 F.3d 270, 278 (1st Cir.1993) (stating that "[t]he court must consider the totality of the circumstances, focusing principally on the level of control contractually reserved to the governmental entity over the physician's provision of patient services"); *López v. Nutrimix Feed Co., Inc.,* 27 F.Supp.2d 292, 298 (D.P.R.1998); *Flores Román v. Ramos González,* 127 D.P.R. 601, 608 (1990) ("On the other hand, we must also find if the relationship between the parties to a contract for services is one of employer and employee or of a principal and independent contractor. The guiding rule in this case should be the nature, scope and degree of control of the principal over the performance of the job.").

The only evidence submitted by the parties with respect to the nature and extent of the relationship between Guadalupe, Geobel and Cruz is the July 30, 2003, Construction Agreement whereby Cruz agreed to build an annex on the second story of Guadalupe's property for $10,000 including materials and labor. (Docket No. 44–4.)[5] This agreement does not specify whether Cruz was hired as an inde-

---

4. The Restatement (Second) of Agency states that an independent contractor is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the per-

formance of the undertaking." Restatement (Second) of Agency § 2(3) (1958).

5. It is unclear whether the date of July 30, 2003, in the contract is a typographical error

pendent contractor or as an employee. In addition, said agreement contains no provision regarding whether Cruz or his employees would work full-time or part-time, or whether they would enjoy or accumulate vacation time, sick leave and retirement benefits. Further, the agreement does not specify how payment would be made.[6] Moreover, the Construction Agreement is silent as to the extent and nature of Geobel's or Guadalupe's control over the execution the construction work.

Aside from the Construction Agreement, the parties have failed to present any additional material evidence to support their respective claims regarding the nature of their relationship. In particular, Guadalupe and Geobel, as movants, have failed to carry their burden of providing evidence (uncontroverted or otherwise) to support their claim that Guadalupe hired Cruz as an independent contractor. Consequently, the court can not assume, for purposes of the motion for summary judgment, that a principal-independent contractor relationship was created between Guadalupe and Cruz by the Construction Agreement.

Even if the court were to make such an assumption, however, Guadalupe and Geobel have not presented sufficient uncontroverted evidence to necessarily shield them of liability by virtue of Cruz's status as an independent contractor. In *Pons Anca, supra,* the Supreme Court of Puerto Rico established the general norm that the principal of an independent contractor is not liable for the negligent acts of said contractor when: (1) the independent contractor's negligence consists of failing to take routine precautionary measures in executing the work for which he has been retained; (2) the principal could not have foreseen the independent contractor's negligent failure to take said measures; and (3) the principal is diligent in procuring that the independent contractor has sufficient skills and experience to carry out the work for which he has been hired, so that it can be expected that the contractor will take special precautionary measures as needed to prevent the risks and dangers that the work may cause. *Id.* at 354–59. The principal, however, may be liable for the negligent acts of an independent contractor when the work for which the contractor has been hired, by its nature, entails particular risks or hazards and the principal neither requires the contractor to take special safety measures nor takes these measures himself. *Id.*

Turning now to the facts of the case at bar, it is uncontested that Cruz failed to provide a training program for his employees and failed to provide a guard rail system to prevent falls. (Docket No. 32, at 3, ¶¶ 9, 10; Docket No. 35, § II, ¶¶ 9, 10.) On the other hand, Cruz testified in his deposition that he had safety equipment available for the use of his employees, including Flores García, but that they did not use the equipment even though they knew it was available. (Docket No. 32, Exh. 2, Cruz's depo. at 50–51.)[7] Thus, the

---

or the contract was actually subscribed and executed subsequent to Flores García's fall.

**6.** There is a discrepancy between the amount to be paid under the Construction Agreement executed by both Guadalupe and Cruz and the other "construction agreement" executed by Cruz only: the former is for the amount of $10,000 (*see* Docket No. 44–4) and the latter is for the amount of $21,800 (*see* Docket No. 44–2).

**7.** As stated before, Guadalupe and Geobel allege that Flores García's accident is the result of his own negligent acts and omissions because, among other things, he knew that safety equipment provided by Cruz was available but did not use it. (Docket No. 32, at 7.) Although Cruz's deposition testimony, if true, supports the allegation that Flores García was negligent, Flores García's negligence, if any, may result in a reduction of the indemnity that may be awarded to plaintiffs, but does not necessarily exempt Guadalupe and Geobel

evidence shows that while Cruz failed to train his employees to avoid dangers such as falls, he made available several items of safety equipment to them. In sum, with respect to the first prong of the *Pons Anca* test, there is evidence that Cruz took some precautionary measures and failed to take others.

With respect to the second prong, (i.e., whether Guadalupe could have foreseen Cruz's alleged negligent failure to take precautionary measures), it is uncontested that Guadalupe never saw Flores García or any other worker wearing any kind of safety equipment such as gloves, helmets and ropes to fasten themselves:

Q. What precautions or security measures did you see that these persons took when they worked there?

A. That they?

Q. Did you see them wearing helmets?

A. No.

Q. Did you see them wearing gloves?

A. No.

Q. Did you see them using that kind of ropes that you put around your waste to tie yourself?

A. No.

Q. None?

A. None.

Q. And that means all of Mr. Cruz' employees?

A All.

(Docket No. 44–5, Guadalupe's depo., page 36, line 18 to page 37, line 7.) Hence, there is evidence suggesting that Guadalupe was aware that there were construction workers laboring without safety equipment, thus, failing to satisfy the second prong of the *Pons Anca* test. Furthermore, as to whether Guadalupe: (1) knew that safety equipment was available for the workers; (2) ever requested Cruz or the workers to use said equipment; (3) allowed the construction work to go forward regardless of the fact that Cruz's employees were not using safety equipment; and (4) was diligent in procuring that Cruz had sufficient skills and experience to carry out the work for which he had been hired, Geobel and Guadalupe do not highlight any particular uncontroverted part of the record to the court's attention. Therefore, even if Cruz was an independent contractor, Geobel and Guadalupe have not adequately addressed all the prongs of *Pons Anca* to put the court in a position to grant summary judgment based on Cruz's status as an independent contractor. Moreover, the questions of how did Flores García's accident occur (which at this point the record simply indicates that Cruz "saw two feet falling" down (Docket No. 32, Exh. 7, Cruz's depo., at 63)) and whether Guadalupe could have foreseen that Flores García could fall from the roof in which he was working because of Cruz's negligence in not enforcing the use of safety equipment are better suited for the jury.[8]

### C. Dismissal of the complaint on other grounds.

Despite the absence of justification to grant summary judgment on the basis of the type of contractual relationship between Cruz and those who hired him, Gua-

---

from liability as they allege. P.R. Laws Ann. tit 31, § 5141.

**8.** As to the claims against Geobel, the Supreme Court of Puerto Rico has determined that a corporation may be found liable for the damages caused by the tortious acts of its agents committed in the ordinary course of his official business. *See Casanova v.* *González Padín,* 47 D.P.R. 488 (1934) *revoked on other grounds by Raldiris, et al. v. Levitt and Sons of Puerto Rico, Inc.,* 103 D.P.R. 778 (1975). Thus, Geobel's liability will ultimately depend on whether Guadalupe was negligent and, if so, whether his negligence occurred during the ordinary course of his official business as president and principal of Geobel.

dalupe and Geobel argue that plaintiffs' voluntary dismissal of the claims against PREPA "in fact establishes a lack of dangerous condition" as alleged in the complaint, and that:

> [o]bviously, it follows that if plaintiffs dismissed their actions against PREPA their whole theory of the dangerous condition becomes non existent because their theory of liability is based exclusively on the fact that Flores [García] was working in an area where he could come in contact with the power lines and provoke a fall or that the power lines were placed below the appropriate height and too close to the property.

(Docket No. 40, at 3–4; *see also* Docket No. 32, at 9–14.)

In the complaint, plaintiff alleges that Flores García's accident occurred because he lost his balance after coming in contact with a power line. The complaint specifically alleges that:

> While Flores [García] was working in said improvements, he came in contact with certain power lines. *As a result,* Flores [García] lost his balance and fell from the second floor. Flores [García] was conscious as he was falling and aware of his imminent death. Flores [García] died on the scene as a result of the fall.

(Docket No. 1, ¶ 11) (emphasis added.)

 A review of the complaint, as drafted, shows that the only allegation as to how Flores García's accident occurred was the he lost his balance and fell from the second floor of Guadalupe's property "as a result" of coming in contact with certain power lines. The complaint contains no other allegation as to how said

accident occurred and the circumstances surrounding the same. Since it is an uncontroverted material fact that Flores García never came into contact with any power lines, however, no rational jury can find for the plaintiffs based on the allegations of the complaint. (Docket No. 31; Docket No. 32, at 4,¶¶ 11–12; Docket No. 35, § II, ¶¶ 11–12.)[9] For the foregoing reason, it is recommended that the request for summary judgment (Docket No. 32) be GRANTED.

IT IS SO RECOMMENDED.

Pursuant to the Order of Referral issued by the court on April 14, 2008 (Docket No. 41), the parties have **five (5) business days** to file any objections to this report and recommendation. Furthermore, the parties are forewarned that the court has set aside the three (3) days term provided by Local Rule 5.1. *Id.* Failure to object within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986).

San Juan, Puerto Rico, this 11th day of August, 2008.

---

9. Although the complaint alleges that Geobel is "severally liable to plaintiff for not providing its contractors with a safe work place," this allegation is made in the context of "requiring Flores García to work in an area where he could come in contact with power lines and provoke a fall ..." (Docket No. 1, ¶ 12.)